UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BOCA GAS COMPANY
HOLDINGS 2, LLC, a Florida
Limited Liability Company,

    Plaintiff,

v.                                      Case No. 3:23-cv-366-BJD-PDB

FIRST COAST ENERGY, LLP,
Colorado limited partnership,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. 5); Defendant's Response (Doc. 14); and Plaintiff's Reply (Doc. 28).

Plaintiff's Motion is predicated on the Petroleum Marketing Practices Act, 15 U.S.C. section 2801 et seq. (the "PMPA"). "Congress enacted the PMPA in 1978 to protect motor fuel franchisees from arbitrary or discriminatory termination or nonrenewal of their franchise agreements." Shukla v. BP Expl. & Oil, Inc., 115 F.3d 849, 852 (11th Cir. 1997). To protect franchisees, the PMPA limits a franchisor's ability to terminate an agreement with a franchisee. 15 U.S.C. § 2804. For example, a franchisor must provide 90 days' notice to the franchisee before terminating or failing to renew an

agreement. 15 U.S.C. § 2804(a). Moreover, when terminating an agreement before its contractual end-date, a franchisor's termination must be based on adequate grounds. 15 U.S.C. § 2802(b).

When a franchisee is subject to an unlawful termination, the PMPA authorizes courts to enjoin that termination when the franchisee, among other things, establishes: 1) "there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation"; and 2) "the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted." 15 U.S.C. § 2805(b).

Plaintiff's position is that Defendant terminated its relationship with Plaintiff without providing Plaintiff at least 90 days' notice. On March 16, 2023, Defendant sent Plaintiff a notice of termination that was effective at 11:59 pm that same day. (Doc. 5.1 ¶ 12); (Doc. 5.1 at 178). Within the notice, Defendant explained the reasons for the termination were Plaintiff's failure to pay $1,202,441.47 in deposits and $1,528,527.37 under a promissory note. (Doc. 5.1 at 178). Plaintiff does not dispute it was in default, but argues it was still entitled to 90 days' notice.

Defendant notes that the series of agreements between it and Plaintiff required Plaintiff to deposit approximately $1.6 million to secure Plaintiff's

timely payment and performance. (Doc. 20 ¶ 6). The deposit provided security for amounts due to Defendant under the agreement and was required to be replenished. Id. ¶ 7. Plaintiff was allowed to pay the deposit in two equal payments, the second of which was due by March 2022. Id. As part of the parties' agreement, Plaintiff also agreed to pay $2 million by March 1, 2022 for the sale of certain facilities. Id. ¶ 12. Plaintiff failed to pay under the promissory note, failed to pay the deposit, and failed to replenish the deposit. Id. ¶¶ 13-14.

Instead of terminating the agreements upon Plaintiff's March 2022 default, the parties entered into the Forbearance Agreement. Id. ¶ 16; (Doc. 26.8 at 2). Plaintiff admitted its past and continuing defaults and that it had no defenses for its failure to pay. Id. Defendant agreed to forego enforcing its remedies, including termination until March 1, 2023, by which time Plaintiff needed to become current on the amounts due. Id. ¶ 17. Plaintiff again defaulted, and Defendant notified Plaintiff of its default and demanded payment on March 2, 2023. Id. ¶ 23; (Doc. 26.10 at 2). By March 1, 2023, Plaintiff still owed the second half of the initial deposit plus nearly $400,000.00 because of Plaintiff's failure to meet its operating expense threshold. (Doc. 26.10 at 2). Plaintiff also paid only approximately $500,000.00 of the $2 million due under the now-mature promissory note. Id. In total, Plaintiff was behind in paying about $2.7 million. Defendant

extended Plaintiff a final opportunity to remedy its continuing breaches by March 16, 2023. When Plaintiff failed to respond to Defendant's March 2, 2023 letter, Defendant terminated its agreements with Plaintiff on March 16, 2023. (Doc. 20 ¶ 24). Once Defendant ceased supplying Plaintiff with fuel, Plaintiff began selling misbranded fuel despite Defendant's exclusive right to provide fuel to Plaintiff. (Doc. 19 ¶¶ 19-20).

When reviewing Defendant's termination, the Court first looks to whether it was based on Plaintiff's "failure to comply [with] a franchise provision that is both conscionable—that is, not absurd, ridiculous, extreme, or excessive—and of real importance or great consequence to the franchise relationship." Doebereiner v. Sohio Oil Co., 880 F.2d 329, 334 (11th Cir. 1989), opinion amended on denial of reh'g, 893 F.2d 1275 (11th Cir. 1990). That standard is easily met here. Plaintiff continually breached its obligations under the franchise agreements: first by failing to pay millions of dollars as security and for the purchase facilities; then by failing to replenish the initial deposit; and, finally, by using misbranded fuel. Plaintiff does not dispute there were adequate grounds for termination.

As to the notice accompanying the termination, the Court finds that Plaintiff was on notice for more than a year that the agreements would be terminated. The March 11, 2022, Forbearance Agreement provides that the "Termination Date" of the agreements would be March 1, 2023 at 5:00 pm.

(Doc. 26.8 at 4). Plaintiff was on notice for more than a year before the actual termination that its agreements with Defendant would end. To prevent termination, Plaintiff was required to come in compliance with the parties' agreements, something Plaintiff failed to do for years and knew it would not do by March 1, 2023. Indeed, the fact that Defendant agreed only to forbear— as opposed to waiving its rights— from enforcing its rights evinces that Plaintiff knew termination was the natural consequence of its defaults. Defendant cannot now be penalized for attempting to allow Plaintiff to meet its contractual obligations.

Once Plaintiff began relying on misbranded gasoline, even if born from desperation, Defendant had a new ground to terminate the agreements. Wisser Co. v. Mobil Oil Corp., 730 F.2d 54, 57 (2d Cir. 1984) (allowing for immediate termination of franchise agreement where the franchisee sold misbranded fuel). While Plaintiff claims it needed the fuel to survive, that situation was of Plaintiff's own making.

Setting aside the Court's finding that Plaintiff received more than 90 days' notice, a franchisor can terminate an agreement with less than 90 days' notice when it would not be reasonable for the franchisor to furnish 90 days' notice. 15 U.S.C. § 2804(b). On this point, Plaintiff acknowledges it was in default but argues notice was required because it was paying for the fuel it was receiving. In a similar situation, the Sixth Circuit Court of Appeals

allowed a franchisor to terminate its agreement with its franchisee with ten days' notice. Marathon Petroleum Co. v. Pendleton, 889 F.2d 1509, 1512 (6th Cir. 1989). Even though the franchisor had previously accepted late payments and the franchisee eventually made them, the franchisor warned the franchisee that untimely payments would not be accepted indefinitely. Id. While Plaintiff argues it was still making payments for the fuel it received, it was also falling further and further behind on its debt obligations as interest accrued and its security deposit shrank. Further, it was placed on notice Defendant would not allow Plaintiff's default to continue indefinitely and even allowed Plaintiff a final two-week grace period before terminating the franchise agreements. Under these circumstances, there is not a sufficiently disputed question as to the method of Defendant's termination of the agreements nor would the balance of hardships weigh in Plaintiff's favor. Defendant cannot be made to bear ongoing losses caused by Plaintiff's continual defaults where Defendant allowed Plaintiff over a year to come into compliance, nor must Defendant be subjected to Plaintiff's use of misbranded fuel.

Accordingly, after due consideration, it is

**ORDERED:**

Plaintiff's Motion for Preliminary Injunction (Doc. 5) is **DENIED**.

- 7 -

**DONE** and **ORDERED** in Jacksonville, Florida this 26th day of April, 2023.

*/s/ Brian J. Davis*
BRIAN J. DAVIS
United States District Judge

2
Copies furnished to:

Counsel of Record