IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 3:23-cv-00366-BJP-PDB

BOCA GAS COMPANY HOLDINGS 2, LLC, a Florida limited liability company,

     Plaintiff,

vs.

FIRST COAST ENERGY, L.L.P., a Colorado limited partnership,

     Defendant.

_____/

### PLAINTIFF/COUNTER-DEFENDANT BOCA GAS COMPANY HOLDINGS 2, LLC AND COUNTER-DEFENDANT ABBAS JAFERI'S MOTION TO DISMISS OR STAY

Plaintiff/Counter-defendant, BOCA GAS COMPANY HOLDINGS 2, LLC ("Boca Gas"), and Counter-Defendant, ABBAS JAFERI ("Abbas"), by and through their undersigned counsel, and pursuant to the *Wilton/Brillhart*[1] doctrine and the *Colorado River*[2] doctrine, hereby requests that this Court abstain from this case in favor of the pending substantially similar state court suits or, alternatively and pursuant to Fed. R. Civ. P. 8(a)(1), 12(b)(1), and 12(b)(6) and Local Rule 1.10(a), seeks dismissal of several of the counterclaims raised by Defendant/Counter-

_____

[1] *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

[2] *See Col. River Water Cons. Dist. v. United States*, 424 U.S. 800 (1976).

Plaintiff FIRST COAST ENERGY, L.L.P. ("First Coast") in its Counterclaim, filed April 27, 2023, and, as support, argues as follows:

## BACKGROUND[3]

### The Parties' Agreements

Boca Gas purchased real property comprising of 28 gas stations from First Coast through two separate Purchase and Sale Agreements, executed respectively in November 2019 and February 2020. [D.E. 30 at 16, ¶¶ 23–24]. In conjunction with these real estate transactions, the parties entered into 28 Fuel and Dealer Supply Agreements ("Supply Agreements") in which First Coast became the sole fuel supplier of the gas stations owned by Boca Gas. *Id.* at 16, ¶ 26. As additional consideration for the sale of each facility, Boca Gas and First Coast entered into four separate agreements: (1) a Supplemental Agreement ("Supplemental Agreement"); (2) a Declaration of Fuel Supply Restriction ("Fuel Supply Declaration") for each facility between First Coast, Boca Gas, and a third-party entity (which mostly consisted of the Embree Entities) requiring that the supply of fuel to the Facility be purchased through First Coast; (3) one Promissory Note ("Real Property Promissory Note") issued by Boca Gas to First Coast which related to the 28 facilities; and (4) a Personal Guaranty ("Personal Guaranty") for each

---

[3] The factual background recited in this motion is constrained to the pleadings alleged in First Coast's Answer and Counterclaim, and the Court must accept the well-pleaded facts of the counterclaim and any reasonable inferences drawn from those facts. *Regions Bank v. Kaplan*, 2021 WL 4852268, at *9 (11th Cir. Oct. 19, 2021). Notwithstanding this exacting standard, Boca Gas and Abbas do not concede that any of the factual averments contained in the Counterclaim represent an accurate account of events in this case.

facility by Abbas Jaferi, Ali Jaferi, Ather Jaferi, Hani Baskeron, and Salpie Baskeron. *Id.* at 18–21, ¶¶ 34–42.

Regarding the Real Property Promissory Note, Boca Gas was late on its payment, and so in March 2022, the parties entered into a one-year Forbearance Agreement that would expire on March 1, 2023 ("Forbearance Agreement"). *Id.* at 22, ¶ 51. Pursuant to the Forbearance Agreement, "In consideration of [Boca Gas]'s agreement of timely and strict compliance with the terms of Supply Documents and Loan Documents,", "First Coast agree[d] to forbear until [March 1, 2023] from exercising its rights and remedies under the Supply Documents and the Loan Documents and otherwise as a result of the Existing Defaults." [D.E. 26-8 at 4].[4] Critically, under the section of the Forbearance Agreement entitled "Remedies of First Coast Upon Default," the agreement states:

> In the event that any of the representations, warranties, agreements, covenants, or conditions contained in the Agreement or the Supply Documents and the Loan Documents are not satisfied, performed or discharged as, when, and in a manner required by this Agreement or the Supply Documents and the Loan Documents, . . . First Coast shall immediately be entitled to exercise any and all of its rights and remedies under any of the Supply Documents and the Loan Documents, at law, in equity, or otherwise, without further notice to any party obligated thereon, ***except such notice as is required by applicable law.***

---

[4] The Supply Agreements, the Supplemental Agreements, the Promissory Note, the Personal Guaranties, the Forbearance Agreement, and the Notice of Termination were incorporated into, or attached as exhibits to, First Coast's Counterclaim. These documents can be considered in a motion to dismiss. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss.").

*Id.* at 5 (emphasis added). Section 20 of the Supply Agreement, entitled "Termination," in turn, provided that termination of the agreement can only occur in accordance with the notice provisions of the PMPA. [D.E. 21-3 at 13]. In particular, it stated that:

> This Agreement is subject to and governed by Title 1 of the Petroleum Marketing Practices Act, 15 U.S.C. 2801, et. seq. ("PMPA"), which is made a part of the Agreement. . . . Notice of termination of non-renewal of [the Supply Agreement] by First Coast shall be provided in the manner prescribed by PMPA and the franchise created by [the Supply Agreement] ***shall continue until the effective date, including any postponement thereof, of such termination or non-renewal.***

*Id.* (emphasis added). Reading these two provisions together, the "notice as is required by applicable law" to terminate the relevant agreements must take into account any "postponement thereof"–i.e., the one year forbearance period–in rendering what the "effective date" would be for lawful notice of termination under the PMPA.

Notwithstanding, two weeks after the forbearance period, on March 16, 2023, First Coast sent Boca Gas a Notice of Termination, stating that Boca Gas has failed to make deposits and pay sums due pursuant to a Promissory Note ("Notice of Termination"). [D.E. 1-3 at 1–2]. The Notice of Termination does not allege the failure to pay for the supply of, or costs associated with, fuel. *See id.* Rather than providing 90-days' notice of termination as required by PMPA, First Coast instead purported to terminate effective that same day, or "at 11:59 p.m. on Thursday March 16, 2023." *Id.* at 2. As of March 2023, Boca Gas owed First Coast the

payments under the Real Property Promissory Note for $1.52 million. [D.E. 1-3 at 2].

## Procedural History

Boca Gas commenced this suit in late March 2023, seeking, among other things, a declaration under the PMPA and the Federal Declaratory Judgment Act regarding whether First Coast properly terminated the franchise relationship. [D.E. 30 at 2, ¶ 1; D.E. 1 ¶¶ 27–32]. A month later, following the Court's denial of Boca Gas's motion for preliminary injunction under the PMPA, First Coast filed its Answer. The Counterclaim included seven claims, five of which were for breach of contract and two of which sought preliminary and permanent injunctive relief. [D.E. 30 at 28–36, ¶¶ 72–121]. The five breach of contract claims relate to four purported breaches against Boca Gas of the Supply Agreements, Supplemental Agreements, Promissory Note, and Forbearance Agreement, and one alleged breach against Abbas concerning the Personal Guaranties. *Id.* at 28–30, ¶¶ 72–92. As to Count VII, First Coast seeks an injunction that Boca Gas "immediately de-brand all of the Facilities by removing and discontinuing the use of all trademarks, colors, and names of First Coast and First Coast's suppliers." [*Id.* at 36; D.E. 1-3 at 2]. For Count VI, First Coast seeks to enforce its rights under the Supply Use Declaration. [D.E. 30 at 33]. For these two requests for injunctive relief, First Coast has sought a preliminary injunction, which Boca Gas opposes. [D.E. 51, 73, 81]. That motion is currently awaiting disposition. Aside for the requests for

preliminary injunctive relief from both parties, no discovery has yet taken place and, more generally, this case is still in its infancy. [*See* Dkt.].

### First Coast's Similar Claims in Parallel State Court Proceedings

In March 2023, First Coast filed several state court lawsuits that correspond to the respective counties in which a Fuel Supply Declaration was recorded. They are as follows:

(a) *First Coast Energy, L.L.P. v. Boca Gas Company Holdings 2, LLC, et al.*, No. 122023CA000310 (Fla. 3d Cir. Ct., filed on March 21, 2923) (Columbia County);

(b) *First Coast Energy, L.L.P. v. Boca Gas Company Holdings 2, LLC, et al.*, No. 16-2023-CA-001316 (Fla. 4th Cir. Ct., filed on March 6, 2023) (Duval County);

(c) *First Coast Energy, L.L.P. v. Boca Gas Company Holdings 2, LLC, et al.*, No. 2023CA000580 (Fla. 4th Cir. Ct., filed on March 21, 2023) (Clay County);

(d) *First Coast Energy, L.L.P. v. Boca Gas Company Holdings 2, LLC, et al.*, No. 452023CA000212 (Fla. 4th Cir. Ct., filed on March 21, 2023) (Nassau County);

(e) *First Coast Energy, L.L.P. v. Boca Gas Company Holdings 2, LLC, et al.*, No. 552023CA000899 (Fla. 7th Cir. Ct., filed on March 21, 2023) (St. Johns County);

(f) *First Coast Energy, L.L.P. v. Boca Gas Company Holdings 2, LLC, et al.*, No. 2023CA000337  (Fla. 7th Cir. Ct., filed on March 21, 2023) (Flagler County); and

(g) *First Coast Energy, L.L.P. v. Boca Gas Company Holdings 2, LLC, et al.*, No. 2023-30985-CICI  (Fla. 7th Cir. Ct., filed on March 21, 2023) (Volusia County).

In each state court lawsuit, First Coast raises verbatim the same two claims for injunctive relief as set forth in the Counterclaim. First Coast, in each lawsuit, has filed an emergency motion for temporary injunction, requesting injunctive relief related to the same two requests for injunctive relief as First Coast's motion for preliminary injunction in this case. In the Duval County case, First Coast also

asserts the same five claims for breach of contract set forth in the Counterclaim. What's more, in the Duval County case, First Coast also seeks a declaratory relief under the Florida Declaratory Judgment Act regarding whether First Coast properly terminated the franchise relationship. This claim, too, strongly resembles the claim Boca Gas set forth against First Coast in this suit. Surprisingly, for each state court case, First Coast has not yet served process upon Boca Gas.[5]

## ARGUMENT

This Court should, pursuant to the *Wilton/Brillhart*[6] doctrine, dismiss this case entirely or stay the case pending resolution of the substantially similar state court suits. Alternatively, the Court should enter a stay of this case pending the disposition of the parallel state court suits under the *Colorado River*[7] doctrine.

Assuming the Court does not stay the case, four counts of the Counterclaim should be dismissed due to factual or legal insufficiency. In particular: (1) Count IV should be dismissed as it pertains to Abbas because First Coast has violated Local Rule 1.10(a) in failing to file a certificate of service; (2) Count V should be dismissed because there are no damages claimed as a direct result of the purported

---

[5] Pursuant to Rule 201(c)(2) of the Federal Rules of Evidence, Boca Gas requests that this Court take judicial notice of the dockets, complaints, and motions in the parallel state court proceedings. *See Geico Indem. Co. v. Vazquez*, 2016 WL 10587207, at *1 n.2 (S.D. Fla. Nov. 4, 2016) (judicially noticing "another court's docket entries and orders for the limited purpose of recognizing the filings and judicial acts they represent" (citing *McDowell Bey v. Vega*, 588 F. App'x 923, 926-27 (11th Cir. 2014); *Allianz Glob. Risks US Ins. Co. v. Great Am. Ins. Co.*, 2018 WL 11343746, at *4 (N.D. Ga. Aug. 22, 2018) ("[T]he Court may take judicial notice of publicly filed documents, such as documents filed in other cases.")

[6] *See supra* 1 n.1.

[7] *See supra* 1 n.2.

breach of the Forbearance Agreement; (3) Count VI is comprised of a shotgun pleading in violation of Rule 8(a)(2) and fails to comply with the caption requirements of Local Rule 1.09(a); and (4) Count VII is moot and thus should be dismissed under Rule 12(b)(1). These bases for abstention and dismissal will be addressed in turn.

## I.    Abstention is warranted here pursuant to the *Wilton*/*Brillhart* doctrine or, alternatively, the *Colorado River* doctrine

Generally speaking, abstention under *Wilton*/*Brillhart* and *Colorado River* are both applicable when there is a parallel state court suit, with the former applying in the more narrowly tailored context of a parallel declaratory judgment action. *Compare Brillhart*, 316 U.S. at 494–95, *and Wilton*, 515 U.S. at 289, *with Colo. River*, 424 U.S. at 813. Thus, if a suit only involves declaratory relief, then the more specific *Wilton/Brilhart* standard controls. A complication occurs where, as in this suit, the parties have also sought coercive relief (in the form of breach of contract and injunctive relief). This is critical in light of the fact that the *Colorado River* doctrine is ordinarily regarded as a "more stringent" test for abstention than the *Wilton/Brillhart* doctrine. *State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303, 1309 (M.D. Fla. 2014). That is, under the *Colorado River* doctrine, a movant must show that "extraordinary circumstances" exist for the Court to enter an order of abstention. *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004). Comparably, a

movant seeking abstention under *Wilton/Brillhart* bears a much less onerous burden and must satisfy a "discretionary standard" test. *Wilton*, 515 U.S. at 289.

"The Eleventh Circuit has not ruled on which test applies to determine whether *Colorado River* or *Brillhart* abstention applies to cases involving claims for declaratory and coercive relief." *Allianz Glob. Risks US Ins. Co.*, 2018 WL 11343746, at *4. "There are four frameworks outlined by other circuits to determine whether *Colorado River* or *Brillhart* abstention applies to a suit involving both a declaratory judgment claim and a claim for damages." *Id.* "Courts in this Circuit have applied two of those frameworks." *Id.* One test is a bright-line test which states that "when a case involves any claims for damages or coercive relief, *Colorado River* abstention applies." *Id.* The other test, in turn, "looks to the 'heart of the action' to determine whether *Colorado River* or *Brillhart* doctrine applies, and where, as here, the claims for other relief turn on the same issues as the declaratory judgment claims, the *Brillhart* abstention doctrine applies." *Id.* Despite the conflicting tests, this Court may readily opt to apply the heart of the matter test, given that "[a] growing number of courts in the Eleventh Circuit now reject the bright line test." *Am. Fam. Ins. Co. v. Cruz*, 2021 WL 7541549, at *3 (N.D. Ga. Nov. 5, 2021) (citing *Allianz Glob. Risks US Ins. Co. v. Great Am. Ins. Co.*, 2018 WL 11343746, at *5 (N.D. Ga. Aug. 22, 2018); G*regory Haskin Chiropractic Clinics, Inc. v. State Farm Mut. Auto. Ins. Co.*, 391 F. Supp. 3d 1151, 1155 (S.D. Fla. 2019)). That is because:

> [T]he "heart of the action" test is the most appropriate and the most readily reconcilable with applicable legal principles. In *Wilton*, the unanimous Supreme Court explained that declaratory judgment actions are fundamentally different than ordinary civil actions because of the discretion imbued in district courts by Congress in deciding whether and when to avail themselves of this "remedial arrow in the district court's quiver." 515 U.S. at 288. Thus, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* To eradicate that discretion simply because a coercive claim has been tacked onto what is, at its core, a declaratory judgment action would be to jettison those same considerations of practicality and wise judicial administration, to exalt form over substance, to marginalize *Wilton*, and to undermine the statutory scheme established by Congress. If peripheral monetary claims could deprive district courts of the discretion granted them by the Declaratory Judgment Act to hear or not to hear what are fundamentally declaratory judgment actions, then such claims would render federal courts virtually powerless (save for the rare case in which *Colorado River* abstention is warranted) to avert wasteful, duplicative declaratory litigation on exclusively state law issues in federal court running alongside parallel state litigation on the same issues, with concomitant disruption to the time-honored values of federalism, comity and efficiency. Worse still, such a rule might encourage abuses, as savvy litigants would recognize that creative pleading of tagalong coercive claims in tandem with declaratory judgment claims was a surefire means of circumventing *Wilton* and preserving a federal forum, notwithstanding parallel state proceedings.

*W. Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Tr.*, 2010 WL 11506019, at *4 (S.D. Fla. May 14, 2010) (quoting *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1237–38 (S.D. Ala. 2006)).

Accordingly, unless and until the Eleventh Circuit rules on this issue, the prevailing test in this Circuit is ostensibly the "heart of the action" test. Under the "heart of the action" test, a court determines "whether the nucleus of an action is declaratory or coercive, and then exercise jurisdiction over the whole if the core is

coercive, or exercise discretion as to both claims if it is declaratory." *Am. Fam. Ins. Co.*, 2021 WL 7541549, at *3 (alterations adopted) (quotations omitted).

Here, the core of the claims in this suit is declaratory, and so the Court should decide whether it should exercise its jurisdiction over the declaratory and coercive claims. In deciding whether First Coast properly terminated the franchise relationship, the Court will first have to decide whether Boca Gas breached the agreements at issue by failing to pay the amounts due in a timely manner. *See* 15 U.S.C. § 2802(c)(8). As such, the monetary damages alleged in the breach of contract claims and the enjoinment of future conduct in injunctive relief claims derive are "flow[s] from, and is ancillary to," the issues of whether First Coast properly terminated the franchise relationship. *See City of Fairhope, Alabama v. Charter Oak Fire Ins. Co.*, 2019 WL 10897012, at *6 (S.D. Ala. July 1, 2019); s*ee also Allianz Glob. Risks US Ins. Co.*, 2018 WL 11343746, at *6 (assessing abstention under *Wilton/Brillhart* standard because, "Allianz's counts for equitable subrogation and unjust enrichment necessarily hinge on the outcome of its request for a declaratory judgment, that is, Allianz's success on its latter two claims depends on the Court finding that the Great American Policy owes primary coverage and the Allianz Policy owes secondary coverage"); *W. Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Tr.*, 2010 WL 11506019, at *5 (S.D. Fla. May 14, 2010) ("Plaintiff's nondeclaratory claims do not raise any distinct factual or legal issues and require the same analysis as the declaratory judgment claims. . . . Plaintiff's nondeclaratory claims hinge on the outcome of the declaratory claims—that is,

they are dependent upon the same misrepresentations and a finding that the Policies are invalid.").

Indeed, disposing of the PMPA declaratory relief claim "will completely resolve the controversy among the parties." *W. Coast Life Ins. Co.*, 2010 WL 11506019, at *5. If Boca Gas prevails on the declaratory judgment claim, First Coast cannot seek injunctive relief nor accelerate the payments due under the loan documents. If the Court determines that First Coast properly terminated the franchise relationship, then it can properly seek monetary damages and injunctive relief against Boca Gas pursuant to the loan documents. As such, because this action is, at its heart, a declaratory judgment action, the "discretionary standard" of *Wilton/Brillhart* applies to the instant abstention issue.

### A. Abstention is justified under the Wilton/Brillhart doctrine

The Declaratory Judgment Act gives a federal court broad discretion in deciding whether to exercise jurisdiction over a case when there is a pending parallel state court case. *See Wilton*, 515 U.S. at 286-87 ("[T]he Declaratory Judgment Act . . . confer[s] on federal courts unique and substantial discretion . . . ."). In *Brillhart*, the Supreme Court expressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 316 U.S. at 495. The Supreme Court warned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* Thus, the test in

deciding whether to exercise jurisdiction is whether the controversy "can better be settled in the proceeding pending in state court." *Id.*

"Guided by these general principles expressed by the Supreme Court, as well as 'the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts," the Eleventh Circuit in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F. 3d 1328 (11th Cir. 2005), provided the following "factors for consideration to aid district courts in balancing state and federal interests":

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"-that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
>
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
>
> (6) whether there is an alternative remedy that is better or more effective;
>
> (7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 1330–31. This list "is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*." *Id.* at 1331. "[T]he Court has no obligation to consider each and every factor on the list. . . . " *Bright House Networks, LLC v. Pinellas Cty.*, 2014 WL 4794786, at *8 (M.D. Fla. Sept. 25, 2014).

As a threshold matter, before considering the *Ameritas* factors, it must be determined whether federal and state declaratory judgment action involve substantially the same parties and substantially the same issues. *Hartford Steam Boiler Inspection & Ins. Co.*, 2016 WL 5661636, at *2 (citing *Brillhart*, 316 U.S. at 495). Here, the amalgam of parties in the various state court suits encompass the same parties in this suit. Moreover, the declaratory judgment claims in this case and state court suits are substantially similar. Boca Gas seeks declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, regarding whether First Coast properly terminated the franchise relationship under the PMPA. In the Duval County case, First Coast seeks declaratory relief under the Florida Declaratory Judgment Act, § 86.011, Fla. Stat., regarding whether First Coast properly terminated the franchise relationship, which was governed by the PMPA. Because the parties are the same, and the claims are substantially similar, the

Court must weigh the *Ameritas* factors to gauge whether abstention under *Wilton/Brillhart* is justified.

Without undergoing an exhaustive analysis of each *Ameritas* factor, it is enough that some of the factors heavily weigh in favor of abstention for this Court to exercise its discretion and stay the suit pending the resolution of the parallel state court proceedings. *See Great Lakes Reinsurance (UK) PLC, TLU Ltd.*, 298 F. App'x 813, 815 (11th Cir. 2008) ("We . . . have upheld a district court's refusal to assert jurisdiction where the district court had considered only two of the factors . . . ."); *Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo. Ass'n, Inc.*, 2016 WL 5661636, at *4 (S.D. Fla. Sept. 30, 2016) (abstaining under *Wilton/Brillhart* where court had only considered four factors). On a related note, it is of no moment that this suit involves a federal question—i.e., application of the PMPA—as courts have held that implication of federal law "does not control the district court's decision whether to stay the case" under *Wilton/Brillhart. Great Lakes Reinsurance (UK) PLC*, 298 F. App'x at 813.

With respect to the fifth factor, there is an inherent potential for friction between the federal and state courts "in having double-tracked, near-identical litigation pending in both federal and state courts, such that the first court's ruling on a particular issue may have res judicata effect on the second court's ability to hear and decide the same issue, even if the second court disagrees with the first court's determinations." *Mt. Hawley Ins. Co.*, 2013 WL 6858946, at *4. Further,

the risk of encroachment by this Court onto state jurisdiction "exists for the same reasons." *Id.* Therefore, the fifth *Ameritas* factor favors abstention.

Factors seven and eight also militate in favor of abstention. The state court is charged with evaluating the facts of the case in resolving First Coast's multiple breach of contract claims. "Rather than have two courts duplicate effort and assess the same underlying facts, 'a far more sensible and efficient approach is for the state court that is already tasked with examining those facts in the underlying case to apply those same facts to the pending claims for declaratory relief.'" *Wesco Ins. Co. v. S. Mgmt. Servs., Inc.*, No. 2:16-CV-1955-RDP, 2017 WL 1354873, at *5 (N.D. Ala. Apr. 13, 2017).

In regards to the ninth factor, although the question of termination of the franchise relationship travels under the PMPA, issues concerning interpretation of the loan documents and enforceability of the restrictive covenants are governed by and subject to Florida law. Therefore, this factor favors abstention. *St. Paul Fire & Marine Ins. Co. v. Johnson Homes of Meridian, Inc.*, 2005 WL 2739141, at *9 (S.D. Ala. Oct. 24, 2005) (state court had a particularly strong interest in deciding contract issues governed by state law that were also raised in a federal declaratory judgment action). Weighing the *Ameritas* factors, this Court should dismiss this suit in its entirety or enter a stay pending resolution of the parallel state court proceedings.[8]

---

[8] This Court should stay or dismiss the action under the *Wilton/Brillhart* doctrine. In *Wilton*, the Supreme Court observed that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action

## B. Alternatively, abstention is justified under the Colorado River doctrine

In the event this Court determines that it can only abstain under "extraordinary circumstances," a stay should be entered in this suit nonetheless under the *Colorado River* doctrine. "*Colorado River* abstention may apply when there are parallel federal and state proceedings that involve substantially the same parties and issues." *Stuart v. Ryan*, 818 F. App'x 858, 861 (11th Cir. 2020) (citing *Jackson-Platts v. GE Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013)). In evaluating whether a court should refrain from exercising jurisdiction over an action, seven factors inform the court's analysis: "(1) whether the state or federal court has assumed jurisdiction over any property at issue; (2) the relative inconvenience of the federal forum; (3) the likelihood of 'piecemeal litigation'; (4) the order in which the courts obtained jurisdiction; (5) whether state or federal law will be applied; (6) whether the state court can adequately protect the parties' rights; and (7) 'the vexatious or reactive nature of either the federal or the state litigation.'" *Baker v. Warner/Chappell Music, Inc.*, 759 F. App'x 760, 764 (11th Cir. 2018) (citing *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320,

---

can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." 515 U.S. at 288 n.2. "On the other hand, numerous courts engaging in abstention pursuant to *Brillhart* and *Wilton* have instead elected to dismiss the declaratory action without prejudice." *Lincoln Ben. Life Co. v. Look*, No. 2:05CV0353-FTM, 2006 WL 3734331, at *7 (M.D. Fla. Dec. 15, 2006) (citing *Ameritas*, 411 F.3d at 1332 (finding no abuse of discretion in district court's decision to dismiss declaratory judgment action in favor of parallel state court action under *Wilton/Brillhart*). A dismissal is preferable, however, where there is no "risk of a time bar with respect [the] claims" and "resolution of state court [proceeding between the parties] will be binding in this Court." *Id.* Given that that there is no indicia of a time limitation and that disposition of the declaratory judgment action will be binding in this Court, a dismissal is better approach in this case.

1327 (11th Cir. 2004)). In conducting this analysis, courts should bear in mind that "[n]o one factor is necessarily determinative," *Colorado River*, 424 U.S. at 818, and that "[t]he weight to be given to any one factor may vary greatly from case to case," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

That said, it must be underscored that "'[t]he single most important factor' in the *Colorado River* analysis is the avoidance of piecemeal litigation." *Baker v. Warner/Chappell Music, Inc.*, 2018 WL 1570360, at *5 (S.D. Fla. Mar. 29, 2018) (quoting *Ambrosia Coal*, 368 F.3d at 1329). "When *Colorado River* abstention is appropriate, the district court, rather than dismissing the action, should enter a stay." *Id.* (citing *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004)).

It is beyond dispute that the present federal action and the Florida state court actions are substantially similar, if not parallel, with both involving almost the exact same defendants and claims. *See Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1344 (S.D. Fla. 1999). In weighing the *Colorado River* factors, the Court should decide whether a particular factor weighs in favor of abstention, weighs against abstention, or is deemed to be neutral. *See Baker v. Warner/Chappell Music, Inc.*, 759 F. App'x 760 (11th Cir. 2018)

a. *Jurisdiction Over the Property*

The first factor is inapplicable to this case and the state court cases are not proceedings *in rem*, so "neither court has taken jurisdiction over property." *Baker*, 759 F. App'x at 763. This factor does not weigh in favor of abstention.

*b. Inconvenience of the Federal Forum*

The second factor, which addresses the inconvenience of the federal forum, heavily weighs in favor of abstention. This factor focuses "primarily on the physical proximity of the federal forum to the evidence and witnesses." *Ambrosia*, 368 F.3d at 1332. At first blush, this factor also seems neutral, given that the facilities at issue are located within this district and within the respective counties of the state court suits. Upon closer review however, the Declarations reveal that this case is more appropriately brought within the respective counties in which the Declarations were recorded. The Declarations, in fact, contain a forum selection clause which requires that First Coast "shall be entitled . . . to enforce specifically its terms and provisions in the state or federal courts located in the Florida county where the Property is located, which shall have *exclusive jurisdiction* of any claims relating to the enforcement of this Declaration." [D.E. 25-2 (emphasis added)]. Based on a plain reading of this mandatory forum selection clause, only one court, either a state court or federal court, has "exclusive jurisdiction" to enforce the terms of the Declarations. Before this litigation was initiated, First Coast filed a lawsuit in each county in this district in which a Fuel Supply Declaration was recorded seeking to enforce the terms of the Declaration. First Coast, however, chose not to serve those state court lawsuits. The state court of the county in which the respective Fuel Supply Declarations were recorded would thus be better situated to address these claims.

To be sure, the Middle District of Florida has five divisions located in Jacksonville (Duval County), Fort Myers (Lee County), Ocala (Marion County), Orlando (Orange County), and Tampa (Hillsborough County), and three other courthouses in Fernandina (Nassau County), Live Oak (Suwannee County), and Saint Petersburg (Pinellas County). *See* 28 U.S.C. § 89(b) (listing counties composing Middle District of Florida and the courthouses for the Middle District of Florida). While there is a federal courthouse in Duval County and Nassau County, the other counties in which Declarations were recorded do not have a federal courthouse. Multiple courts of appeals have held that a forum selection clause that calls for litigation to be held in a particular county which does not have a federal courthouse within the county's boundaries can only be brought in state court. *See City of Albany v. CH2M Hill, Inc.*, 924 F.3d 1306, 1308 (9th Cir. 2019) (concluding that a forum selection clause that states that "[v]enue for litigation shall be in Linn County, Oregon" only permitted suit in state court where there was no federal courthouse located in Linn County and rejecting argument that "federal court may reasonably be deemed to be 'in' a county merely by virtue of its judicial authority over cases that arise in that county."); *Bartels v. Saber Healthcare Group, LLC*, 880 F.3d 668, 674 (4th Cir. 2018) (same); *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009). (same); *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997).

What's more, litigation over the Declarations in this Court should only be permissible for the facilities located in Duval County and Nassau County because

those were the only counties in which Declarations were recorded that have a federal courthouse. *See, e.g.*, *Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269 (11th Cir. 2004) ("The contract provision, 'Venue shall be in Broward County,' because it uses the imperative 'shall,' is most reasonably interpreted to mandate venue in Broward County, and Broward County alone. The provision, however, does not designate any particular forum, such that a suit either in the Seventeenth Judicial District of Florida, or in the Fort Lauderdale Division of the Southern District of Florida, both of which are located in Broward County, would satisfy the venue requirement."). Even then, as demonstrated below, the fact that the state court cases in Duval County and Nassau County were filed first should bolster a proclivity towards abstention. *Nova Bank v. Musser*, 2012 WL 13019032, at *4 (S.D. Fla. Aug. 15, 2012).

### c. *Desirability of Avoiding Piecemeal Litigation*

The third and most important factor–the likelihood of piecemeal litigation–weighs heavily in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Bosdorf*, 79 F. Supp. 2d at 1344. This factor strongly tilts towards abstention where "the parties' dispute has *already* led to many lawsuits in federal and state court." *See Baker*, 2018 WL 1570360, at *5 (emphasis in original). If this case persists, this Court will decide whether the Boca Gas breached the Supply Agreements, Supplemental Agreements, and Promissory Note. This Court will also decide if First Coast should be entitled to a preliminary

and permanent injunction on the Declarations and the brand covenants. This Court, on the other hand, will also have to decide whether it should be declared that First Coast improperly terminated the franchise relationship, in violation of federal law. So too will the state court rule upon these issues. Taking the Duval County Court case as an exemplar, First Coast, as mentioned before, sued for the same breaches of contract and sought the same two requests for injunctive relief, but also a declaration that it properly terminated the franchise relationship, in compliance with federal law.

Further, because this action and the state court actions are identical, "an earlier decision in one court will likely bind the parties in the other under preclusion principles." *Bosdorf*, 79 F. Supp. 2d at 1344. According to the *Bosdorf* Court, this raises two problems:

> First, a party may try to accelerate or stall proceedings in one of the forums to ensure the more "favorable forum" rules first on an issue. Second, the possibility exists that either forum will enter a ruling unaware that the other forum already ruled. In such a case, the forum that loses the race will have engaged in an "unseemly and grand waste of efforts."

*Id.* at 1344 n.14 (quoting *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989)). Accordingly, taking jurisdiction in this case where an identical action is already underway in state court will further piecemeal litigation, rather than avoid it. Should the state court suits find in favor of Boca Gas, "the entire federal action will be mooted, which also weighs in favor of abstention." *Nova Bank v. Musser*, 2012 WL 13019032, at *4 (S.D. Fla. Aug. 15, 2012). The state court

suits will also resolve the same "core issue[s]" involved in this suit, that is, a determination of the parties' rights under the loan documents. *See Baker*, 2018 WL 1570360, at *5; *see also Nova Bank*, 2012 WL 13019032, at *4 ("[T]he state and federal actions both require a determination of the parties' rights and obligations with respect to the NOVA Loan. Accordingly, there is a substantial likelihood of duplicative efforts leading to inconsistent results, which strongly favors abstention."). Application of this factor here is decidedly on the side of abstention.

### d. Order in Which the Court Assumed Jurisdiction

The fourth factor, the order in which the courts assumed jurisdiction, requires consideration of "which action was filed first and the relative progress of each proceeding." *Nova Bank v. Musser*, 2012 WL 13019032, at *4 (S.D. Fla. Aug. 15, 2012). "When analyzing this factor, courts should also keep in mind its underlying policies: the avoidance of forum shopping and the problem of collateral estoppel." *Id.* (citing *Rambaran v. Park Square Enters., Inc.*, 2008 WL 4371356, at *6 (M.D. Fla. Sept. 22, 2008)). More specifically,

> to permit both state and federal suits to go forward would lead to forum shopping by encouraging Plaintiff to simply choose a second court if he becomes unhappy with the first. Deferring jurisdiction to the court where the case was first filed protects the neutrality of the federal system and is consistent with long-standing judicial notions of issue and claim preclusion. It would be illogical to give full faith and credit to the judgments of other courts while encouraging a race to judgment by permitting two suits involving substantially the same parties and issues to go forward.

*Id.*

Here, the Florida state court lawsuits were filed before this action was initiated. Tellingly, First Coast's counterclaims, which are substantially similar to the claims in the state court suits, were filed over a month after the filing of the state court suits. *See Rambaran*, 2008 WL 4371356, at *7 (finding fourth *Colorado River* factor weighed in favor of abstention in part because "the Florida state court case was filed a little over a month before th[e] federal case").

While this suit has had more activity than the state court suits based on First Coast's selective prosecution, "no discovery has taken place," *see Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1345 (S.D. Fla. 1999), and, in any event, this case has only proceeded for a few months. Given that all "actions are both in their infancy," *cf. SOS Furniture Co., Inc. v. Salem*, 2019 WL 279887, at *9 (M.D. Fla. Jan. 22, 2019), this Court's issuance of a few non-dispositive orders should not militate against abstention. Rather, the fact that the state court suits were filed first favors abstention or, at minimum, renders this factor neutral.[9]

*e. Whether State or Federal Law Applies*

Concerning the fifth factor, whether state or federal law applies, although the determination of whether First Coast improperly terminated the franchise

---

[9] In the event First Coast advances an argument that the state courts did not maintain jurisdiction first because First Coast has not yet served the complaints on Boca Gas, such a contention can be soundly rejected because federal courts abide determine jurisdiction based on the first-filed rule. Therefore, the date of first service is irrelevant to the inquiry. *See Berisford Cap. Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*, 677 F. Supp. 220, 222 n.1 (S.D.N.Y. 1988) (dismissing argument that first served action should be regarded as first filed for purposes of the rule); *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 511 n.4 (S.D.N.Y. 2004) ("The relative dates of service of the complaints are irrelevant to the inquiry of which action was first filed.").

relationship is governed by federal law—namely, the PMPA—a preliminary determination must first be made that Boca Gas breached the agreements at issue. Such an issue is governed by Florida contract law. Not only that, First Coast's requests for injunctive relief in both suits, which concerns the applicability of certain restrictive covenants, is also grounded in Florida law. Overall, the Court will need to interpret Florida law substantially more than federal law. While the questions of the law of restrictive covenants and contracts are well settled under Florida law, "questions of Florida property and [contract] law are better suited for Florida state court." *See O'Dell v. Doychak*, 2006 WL 4509634, at *8 (M.D. Fla. Oct. 20, 2006). Further, unlike admiralty and patent law, a determination of the PMPA can be decided by either a state court or a federal court. "[I]f federal and state courts have concurrent jurisdiction over a claim, this applicable law factor becomes less significant." *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1346 (S.D. Fla. 1999). Therefore, this factor either tilts in favor of abstention or is neutral.

*f. Adequacy of the State Court Suits to Protect the Parties' Rights*

"Generally, this factor 'will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights.'" *Nova Bank v. Musser*, 2012 WL 13019032, at *5 (S.D. Fla. Aug. 15, 2012) (quoting *Ambrosia*, 368 F.3d at 1334). "Thus, if both fora are adequate, this factor is neutral." *Id.* "When analyzing this final factor, courts tend to presume the adequacy of the state forum when the plaintiff initially chose to litigate in state court and then later sought to pursue the same action in federal court." *Id.* "Plaintiffs"—like First Coast— "should normally

be required to select one forum and stay there." *See id.*; *see also Noonan S., Inc. v. Volusia Cty.*, 841 F.2d 380, 383 (11th Cir. 1988) ("The fact that both forums are adequate to protect the parties' rights merely renders this factor neutral."). The existence of the forum selection clause in the Fuel Supply Declarations, however, transforms the weight attributed to this factor from arguably neutral to definitively in favor of abstention. For most of the Fuel Supply Declarations, state court is the only adequate forum to address the validity of the restrictive covenants at issue.

*g. Reactive or Vexatious Nature of the Federal or State Litigation*

First Coast's filing of the Counterclaim (even though it was compulsory) should be viewed as vexatious and constitutes "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495. First Coast raises the exact same claims here that it has in the state court lawsuits—especially the Duval County case—of which it filed months before the filing of the Counterclaim. Because First Coast does not seek relief for "other claims as well," the filing of the Counterclaim can only be viewed as vexatious. *Contra Owens-Benniefield v. Nationstar Mortg. LLC*, 2017 WL 1426720, at *6 (M.D. Fla. Apr. 21, 2017) ("Nationstar argues this action is vexatious because Owens–Benniefield filed this federal action well after the start of state court proceedings and raises the same arguments here that she raised in state court. However, Owens–Benniefield raises numerous other claims against Nationstar in this action. The Court cannot say that Owens–Benniefield's initiation

of this action was vexatious, given that she is seeking relief for other claims as well."). This factor weighs in favor of abstention.

> *h. A Balancing of the Colorado River Factors Merits Abstention*

On balance, with the exception of the first factor weighing against abstention and some of the other factors possibly being deemed neutral, most *Colorado River* factors affirmatively weigh in favor of abstention. An abstention under these circumstances would be warranted. *See Baker*, 759 F. App'x at 765 (affirming district court's grant of a stay under *Colorado River* where "only three of the seven factors weigh[ed] in favor of abstention").

## II. Count IV against Abbas must be dismissed in accordance with Local Rule 1.10(a), (d)

Local Rule 1.10 establishes the criterion in this district for filing proof of service of process. Subsection (a) provides that "[w]ithin twenty-one days after service of a summons and complaint, a party must file proof of service." M.D. Fla. Loc. R. 1.10(a). Subsection (d), in turn, states that "[f]ailure to comply with a deadline in this rule can result in dismissal of the claim or action without notice and without prejudice." *Id.* 1.10(d). First Coast filed its counterclaim on April 27, 2023, [D.E. 30], and so it had to file proof of service with respect to each counter-claimant by May 18. Surprisingly, although First Coast filed a proposed summons of Abbas Jaferi on April 28, [D.E. 32], and counsel for Abbas Jaferi accepted service on his behalf, First Coast never filed a certificate of service, in violation of Local Rule 1.10(a). This violation, standing alone, is sufficient to dismiss the claims

against Abbas Jaferi. *See Lange v. Fla. Dep't of L. Enf't*, 2022 WL 18027778, at *1

(M.D. Fla. Dec. 30, 2022) ("Because Lange . . . never filed proof of service of the

summons and amended complaint within the required time, the Court [previously]

dismissed the case without prejudice."); *see also Milfort v. Rambosk*, 2021 WL

2401848, at *2 (M.D. Fla. June 10, 2021) ("But if [defendant] has been served,

[plaintiff] must file proof of service as required by Local Rule 1.10(a).").

### III.  Count V should be dismissed because it fails to state a claim upon which relief can be granted

In Count V, First Coast alleges a breach of the forbearance agreement by

failing to "pay all amounts due under the Supply Agreements and Note." [D.E. 30

¶ 91]. Based on this breach, First Coast argues, it "has suffered damages." *Id*. ¶ 92.

To maintain a breach of contract action under Florida law, a complainant must

allege, among other things, damages resulting from the breach. Baron v. Osman

39 So. 3d 449, 450 (Fla. 5th DCA 2010). "Not all breaches of contract," however,

"result in damages and the law furnishes a remedy only for such wrongful acts as

result in injury or damage." *Scott-Steven Dev. Corp. v. Gables By The Sea, Inc.*,

167 So. 2d 763, 764 (Fla. 3d DCA 1964). In Count V, First Coast does not allege that

it has sustained damages as a result of the breach of the forbearance agreement.

To be sure, in the Notice of Termination, First Coast discusses the damages it

incurred due to purported breaches of the Supply Agreements, Supplemental

Agreements, and Promissory Note. [D.E. 1-3 at 2]. Absent from its calculations was

a damages estimate for a breach of the forbearance agreement, despite the fact that

First Coast alluded to the forbearance agreement in the Notice of Termination. *See id* at 1–2. Indeed, the forbearance agreement itself does not contemplate an independent basis for damages. Rather, according to the agreement, as a remedy for breach of the agreement, "First Coast shall immediately be entitled to exercise any and all of its rights and remedies under any of the *Supply Documents and the Loan Documents*, at law, in equity, or otherwise."  [D.E. 26-8 at 5 (emphasis added)]. Accordingly, the damages of the breach of the Forbearance Agreement are subsumed within the damages claimed for breaches of the Supply Agreements and Promissory Note. Even assuming Boca Gas breached the Forbearance Agreement, it cannot be said that First Coast incurred damages due to that breach independent of its damages it sustained from the breaches of the other agreements. Count V fails to state a claim upon which relief can be granted.

## IV.   Count VI must be dismissed as it is a shotgun pleading and violates local rules

### a. Count VI must be dismissed as an impermissible shotgun pleading

A complaint or cause of action should be dismissed if it is comprised of a shotgun pleading. One basic type of shotgun pleading occurs when a pleader "assert[s] multiple claims against multiple defendants without specifying which applies to which."  *D'Agostino v. Porch*, 2018 WL 7323568, at *1 (M.D. Fla. Aug. 21, 2018) (Davis, J.) (quoting *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)) (reciting different types of shotgun pleading). "The unifying characteristic of all types of shotgun pleadings is that they fail to give the

defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (quoting *Weiland*, 792 F.3d at 1323) (ellipsis omitted).

In Count VI, entitled "Breach of Contract-Declaration of Fuel Supply Restriction," First Coast asks the Court to enter a preliminary and permanent injunction enforcing the terms of the Declarations of Fuel Supply Restriction. [D.E. 30 at 30–33]. However, it is unclear whom First Coast seeks injunctive relief from. Towards the beginning of the count, First Coast says that "Boca has breached and/or stated its immediate intention to breach the Declarations' use restriction by purchasing fuel from other distributors for sale at the references Facilities." *Id.* at 32, ¶ 98. In the next paragraph, however, First Coast opines that it is "likely to suffer irreparable harm if preliminary and permanent injunctions are not entered to prohibit Boca, the Embree Entities, their successors in titles, and all persons or entities occupying or operating any of the properties from selling fuel purchased from any source other than First Coast until the expiration of the Declarations." *Id.* at 32, ¶ 99. Meanwhile, a few paragraphs later, First Coast posits that "Boca and the Embree Entities agreed that First Coast is entitled to an injunction to prevent the breach of and to enforce the Declarations' terms." *Id.* at 33, ¶ 102. In the *ad damnum* clause, however, First Coast, without naming any counter-defendant, asks for the Court to enter an injunction enforcing the terms of the Declaration. *Id.* at 33. It is unclear whether First Coast seeks to maintain this cause of action against every single counter-defendant or merely against a select few. Boca Gas, however, should not be charged with discerning that ambiguity. Instead, the proper course

of action is to strike this claim as a shotgun pleading. *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) ("When faced with a shotgun pleading, the trial court, whether or not requested to do so by a party's adversary, ought to require the party to file a repleader.").

### b. *Count VI must be dismissed as a violation of Local Rule 1.09*

Count VI violates Local Rule 1.09, and therefore should be dismissed. That rule states a party who seeks preliminary injunctive relief "*must include*" within the "title of . . . [a] paper requesting preliminary or permanent injunctive relief" the caption "[Preliminary or Permanent] Injunctive Relief Requested." M.D. Fla. Loc. R. 1.09 (emphasis added). First Coast clearly was aware of this requirement because Count VII was captioned "Preliminary and Permanent Injunctive Relief–Brand Covenant In Dealer Supply Agreements." [D.E. 30 at 10, 34]. Count VI, on the other hand, is dubbed "Breach of Contract–Declaration of Fuel Supply Restriction." As such, Count VI did not include a request for preliminary injunctive relief in the title of the claim. *Id.* at 30. The Court should strike Count VI as violative of Local Rule 1.09. *See Rodriguez v. Comm'r of Soc. Sec.*, 2022 WL 613810, at *1 (M.D. Fla. Mar. 2, 2022) (denying relief based on a party's failure to adhere to Local Rule 1.09).[10]

---

[10] *But see Rucker v. Great Dane Petroleum Contractors, Inc.*, 2021 WL 4169420, at *6 (M.D. Fla. Sept. 14, 2021) (refusing to dismiss a complaint for failure to comply with Local Rule 1.09 where the amended complaint did "not include the words '[Preliminary or Permanent] Injunctive Relief Requested'").

### V.    Count VII must be dismissed as moot

Rule 12(b)(1) provides the proper framework for evaluating a motion to dismiss on grounds of mootness. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007). "In dismissing a case for [mootness], a district court may consider facts outside of the pleadings." *Muhammad v. HSBC Bank USA, N.A.*, 399 F. App'x 460, 461 (11th Cir. 2010). Article III of the Constitution limits the jurisdiction of federal courts to live "cases" and "controversies." U.S. Const. Art. III, § 2. "The doctrine of mootness derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (quotations omitted). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216–17 (11th Cir. 2000). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" *Id.* Thus, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Troiano v. Supervisor of Elections in Palm Beach Cty.*, 382 F.3d 1276, 1282 (11th Cir. 2004).

"The doctrine of voluntary cessation," however, "provides an important exception to the general rule that a case is mooted by the end of the offending

behavior." *Sheely*, 505 F.3d at 1183. Under that doctrine, a case may become moot under the voluntary cessation doctrine where a defendant contends that the wrongful behavior has ceased and it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* In determining mootness where, as here, a private defendant has voluntarily ceased the conduct at issue, the Eleventh Circuit in *Sheely* found three factors relevant:

> (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice;
> (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and
> (3) whether, in ceasing the conduct, the defendant has acknowledged liability.

*Id.* at 1184. Thus, "[a] request for injunctive relief is moot if: '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Davis v. Tony*, 2022 WL 1224261, at \*4 (S.D. Fla. Apr. 26, 2022) (quoting *Reich v. Occupational Safety & Health Review Comm'n*, 102 F.3d 1200, 1201 (11th Cir. 1997)).

Boca Gas has proven that it has ceased the purported misconduct in question, to the extent it ever occurred, and that such misconduct is unlikely to recur (absent a future order from this Court finding that First Coast's termination of the franchise relationship was unlawful and ordering the franchise relationship to be reinstated). Although Boca Gas does not concede liability for its continued use of the First Coast trademarks, because the first and second *Sheely* factors

militate in favor of a finding of mootness, the Court should deem that First Coast's claims has become moot. *See Leigh King Norton & Underwood, LLC v. Regions Fin. Corp.*, 497 F. Supp. 3d 1098, 1107 (N.D. Ala. 2020) (determining that a plaintiff's claim for injunctive relief and compensatory damages was moot under the *Sheely* test even though plaintiff "ha[d] not conceded liability" and, rather, contended that defendant "ha[d] not even stated a claim"); *Kennedy v. T Old Town, LLC*, 2018 WL 11222904, at *3 (M.D. Fla. June 1, 2018) (finding mootness despite third *Sheely* factor weighing against mootness where defendant did "not explicitly acknowledge[] or accept[]" that its website was ADA deficient).

For the first *Sheely* factor–frequency of violations–the Supply Agreements and Supplemental Agreements granted Boca Gas license to use First Coast's trademarks until the end of the lease term. It was not until First Coast terminated the lease on March 16–i.e., when it sent Boca Gas the Notice of Termination–that the use of First Coast's trademarks was called into question. On that date, First Coast instructed Boca Gas to paint out or remove all trademarks on the facilities, which Boca Gas complied with a week later, between March 22 and 24. Notably, Boca Gas adhered to the demand before the instant suit was filed. Insofar as Boca Gas needed a week to comply with these requirements, its removal of First Coast's trademarks cannot sensibly be described as a continuing practice. *See Leigh King Norton & Underwood, LLC*, 497 F. Supp. 3d at 1107 (finding first *Sheely* factor weighed in favor of mootness where defendant complied with the conduct in question "as soon as possible"); *Kennedy*, 2018 WL 11222904, at *3 (M.D. Fla.

June 1, 2018) (finding first *Sheely* factor titled toward a determination of mootness where defendant "immediately remedied" the violation). This factor weighs in favor of a finding of mootness.

As to the second *Sheely* factor, regarding the timing of compliance, Boca Gas fulfilled First Coast's demand before this suit was filed. Because the violation in question transpired on the heels of this suit is on no moment, given that the Notice of Termination was sent only two weeks before this suit was initiated. Notwithstanding, it is worth noting that Boca Gas was the one who initiated suit. First Coast's claims, by contrast, were not filed until late April 2023–a month after Boca Gas removed or painted out First Coast's trademarks. Boca Gas, as maintained by its Chief Executive Officer Abbas Jaferi, genuinely sought to comply with the Notice of Termination and, in so doing, evinced a "genuine desire to comply with the law." *See Access 4 All, Inc. v. Bamco VI, Inc.*, 2012 WL 33163, at *6 (S.D. Fla. Jan. 6, 2012) (siding with defendant on the second *Sheely* factor where, even if the repairs were done in the midst of the lawsuit, "the record reflects that Defendant acted promptly with a genuine desire to comply with the law"). This factor weighs in favor of a finding of mootness. On balance, Boca Gas has demonstrated that Count VII should be dismissed as moot.

## CONCLUSION

For all the above reasons, Boca Gas respectfully requests that this Court dismiss this suit in its entirety under *Wilton/Brillhart* or stay the case under either *Wilton/Brillhart* or *Colorado River* until the conclusion of the parallel state court

actions. If this Court enters a stay, Boca Gas shall provide the Court with a status report of the parallel state court proceedings every ninety (90) days from the date of abstention. In the event this Court does not dismiss or stay this case, Boca Gas requests that this Court partially dismiss Counts IV through VII as facially or legally deficient.

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), counsel for Boca Gas Company Holdings 2, LLC and Abbas Jaferi certifies that they have attempted to confer with counsel for First Coast Energy, L.L.P., Lee D. Wedekind, III and John McDermott, via email and telephone on June 2, 2023.

Dated this 2nd day of June, 2023.

**Weiss Serota Helfman Cole & Bierman**
*Attorneys for Plaintiff/Counter-Defendant Boca Gas Company Holdings 2, LLC and Counter-Defendant Abbas Jaferi*
2255 Glades Road, Suite 200E
Boca Raton, Florida 33432
Phone: (561) 835-2111

By:_____*/s/ Howard D. DuBosar*_____
Howard D. DuBosar
Florida Bar No. 729108
Hdubosar@wsh-law.com
kdoyle@wsh-law.com
Harrison R. DuBosar
Florida Bar No. 1002241
hrdubosar@wsh-law.com
tnovak@wsh-law.com
Jeremy S. Rosner
Florida Bar No. 1018158
jrosner@wsh-law.com